UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Respondent,             5:06-CR-299
vs.                                               (NAM)

KEVIN O'MARA,

                              Petitioner.

---

APPEARANCES:                                      OF COUNSEL:

Kevin O'Mara
14171-052
USP Canaan
P.O. Box 300
Waymart, Pennsylvania 18472
*Petitioner, Pro Se*

ANDREW T. BAXTER                         Ransom P. Reynolds, Esq.
UNITED STATES ATTORNEY            Assistance U.S. Attorney
Northern District of New York
100 South Clinton Street
Room 900, P.O. Box 7198
Syracuse, New York  13261-7198

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

### I. Introduction

In August 2007, petitioner pled guilty to conspiracy to possess with intent to distribute and distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and § 846. In January 2008, petitioner was sentenced by this Court to 70 months imprisonment. Petitioner has filed the present motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the following grounds: (1) ineffective assistance of counsel; (2) petitioner lacked understanding of

the nature and consequences of his plea; (3) petitioner was mentally incompetent due to bi-polar disorder and medication; and (4) petitioner was coerced into signing the plea agreement. The government opposes petitioner's motion. (Dkt. No. 178).

## II.     Factual and Procedural Background

The facts of this case, as briefly stated in the Plea Agreement executed by the parties, are as follows: From December 2004 until August 2006, petitioner knowingly conspired with named and unnamed co-conspirators to possess with intent to distribute and distribute cocaine base (crack). As part of the alleged conspiracy, petitioner introduced co-conspirators to purchasers of cocaine and cocaine base (crack). Petitioner and co-conspirators knowingly and intentionally possessed over 50 grams of cocaine base (crack) and distributed it to others. Petitioner purchased up to four ounces of cocaine base (crack) from a co-conspirator at one time and saw a co-conspirator in possession of between 100 and 200 grams of cocaine base (crack). At the time of his arrest, petitioner owed a co-conspirator $2,100 in unpaid drug debts.

Pursuant to the written Plea Agreement, petitioner entered a plea of guilty to the one-count Superseding Indictment charging him with conspiracy to possess with intent to distribute and distribute cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) and § 846. As part of the Plea Agreement, petitioner agreed as follows:

> 13. **Waiver of Appeal and Collateral Attack.** The Defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case. The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of 121 months or less, including any related issues with respect to the establishment of the Sentencing Guidelines range or the reasonableness of the sentence imposed. The Defendant acknowledges that the number of months

> specified above is not a promise of any particular sentence and is not binding on the Court. The Defendant agrees that, should the sentence imposed exceed 121 months, this would not permit his to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255.

At the proceeding, during which petitioner formally entered a change of plea, petitioner admitted facts set forth in the Plea Agreement which the government asserted established his guilt.  Petitioner also represented to the Court that he was aware that he was waiving his right to appeal:

> THE COURT: You've put in a waiver here for 121 months.  What that means to me is if I sentence you to 121 months or less, there's to be no appeal of any issue of this case, is that your understanding?
>
> THE DEFENDANT: Yes sir.

Plea Transcript, p. 17.

On January 14, 2008, this Court sentenced petitioner to a term of 70 months.  The issue of petitioner's waiver of his right of appeal was also addressed at sentencing:

> THE COURT: Now, both parties do have the right to appeal my sentence in certain limited circumstances, except as restricted by agreements in the plea agreement. When you entered your plea of guilty, you agreed at that time that if I sentence you to 120 months or less, there would be no appeal.
>
> MR. WELLS: 121, Judge.
>
> THE COURT: 121, thank you.  I've sentence you to 51 months less than that, so there will be no appeal, is that your understanding?
>
> THE DEFENDANT: Yes.

Sentencing Transcript, p. 7.

**III.     Discussion**

Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence. *Morales v. U.S.*, 2008 WL 4761705, at * 3 (S.D.N.Y. 2008). A § 2255 petitioner may collaterally attack his sentence on very limited grounds. Indeed, a district court may only vacate or modify a sentence if the court "was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *U.S. v. Addonizio,* 442 U.S. 178, 183 (1979). To be otherwise subject to collateral attack, the sentence must suffer from an error of law that is either constitutional in magnitude or so fundamental as to result in a miscarriage of justice. *See id.; Parsons v. U.S.*, 919 F. Supp. 86, 88-89 (N.D.N.Y. 1996).

**A.     Petitioner's Waiver of Right to Collaterally Attack Conviction**

The government argues that consideration of petitioner's claims on the merits is not necessary since he waived his right to appeal or attack collaterally his conviction. "It is well established in this Circuit that a knowing and voluntary waiver of the right to appeal is enforceable." *U.S. v. Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) (citing *U.S. v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see DeLeon v. U.S.*, 2003 WL 21769836, *3 (S.D.N.Y. 2003) (the defendant's waiver of right to appeal a sentence that is within an agreed upon Sentencing Guidelines range "is enforceable when a 'defendant ... knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement' ") (quoting *U.S. v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998)). Where the hearing held in conjunction with a plea agreement establishes that the defendant entered into the

agreement voluntarily and with an understanding of its terms, including the waiver of a right to file an appeal or collateral challenge to a conviction, the waiver provision is enforceable. *See Liberato v. U.S.*, 2001 WL 930238, *5 (S.D.N.Y. 2001) (citation omitted).

The Second Circuit has also held, however, that "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been produced, here, the plea agreement." *U.S. v. Banks*, 2006 WL 2927235, at *3 (S.D.N.Y. 2006) (citing *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir.2002)); *see also Hernandez*, 242 F.3d at 113-114 (holding that a waiver of a right to attack a sentence that is contained in a plea agreement can be voided, but only when the petitioner is alleging that the process by which he waived his right was deficient). In only very limited circumstances will a court not enforce a waiver of appellate rights, such as, if the petitioner did not make the waiver knowingly, voluntarily, or competently. *U.S. v. Hale*, 2006 WL 1144420, at *2 (W.D.N.Y. 2006) (citing *U.S. v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004)). Moreover, "[i]neffective assistance of counsel 'may render a guilty plea involuntary, and hence invalid' ", *Choi v. U.S.*, 2009 WL 187563, at *2 (E.D.N.Y. 2009) (citing *U.S. v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002)), and may have the same effect on plea agreements. *Id*. (citing *Hernandez*, 242 F.3d at 113-14). However, a claim of ineffective assistance of counsel is not a vehicle for a criminal defendant to attempt an end-run around a knowing and voluntary waiver of his right to appeal his sentence. *See U.S. v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998).

In this case, petitioner stated twice, under oath, before this Court that he understood the waiver and that knew that he waived his right to appeal a sentence within the range set forth in the plea agreement. Petitioner does not specifically address or challenge the waiver in his motion.

Based upon the claims enumerated in the motion, petitioner's argument can be characterized as an assertion that the plea agreement is invalid and thus, the waiver should not be enforced. *See Luna v. U.S.*, 1999 WL 767420, at *3 (S.D.N.Y. 1999) (the court construed the petitioner's argument as an assertion that, due to ineffective assistance of counsel, he was deprived of the ability to make a knowing and voluntary waiver). Therefore, the Court will discuss the merits of petitioner's arguments.

**A.      Denial of Effective Assistance of Counsel**

Petitioner claims that his counsel did not" bring forth" his past rehabilitation efforts or diminished capacity in an effort to obtain a lesser sentence. The government claims that even if petitioner's counsel failed to make these arguments, it was not an error that would give rise to an unconstitutionally poor performance.

A claim for ineffective assistance of counsel will succeed only if petitioner, who "bears the burden on both points," *Scarpa v. DuBois*, 38 F.3d 1, 8-9 (1st Cir. 1994), shows that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would be different." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). When a claim of ineffective assistance of legal counsel is made, "[t]here is a strong presumption that an attorney's conduct satisfied the constitutional minimum." *U.S. v. Aguirre,* 912 F.2d 555, 560 (2d Cir. 1990).

At the commencement of the proceeding in which petitioner changed his plea, the Court asked petitioner if he had sufficient opportunity and adequate time to discuss his case with his attorney and petitioner responded affirmatively. Moreover, petitioner stated that he was fully satisfied with his representation:

>THE COURT: Tell me your lawyer's name please?
>
>THE DEFENDANT: Robert Wells.
>
>THE COURT: Was he appointed to represent you or did you hire him?
>
>THE DEFENDANT: He was appointed sir.
>
>THE COURT: Are you satisfied with his representation of you?
>
>THE DEFENDANT: Yes, I am.
>
>THE COURT: Has Mr. Wells advised you of your rights?
>
>THE DEFENDANT : Yes, sir.

Plea Transcript, pp. 11-12.

Plaintiff's claim that counsel did not "set forth" his past rehabilitative efforts is without merit and is unsupported by the record.  Petitioner's rehabilitative efforts are outlined not only in the Presentence Investigation Report but extensively in the Sentencing Memorandum and exhibits submitted to the Court by petitioner's counsel.  Prior to sentencing petitioner, the Court indicated, on the record, that the Presentence Investigation Report and all submissions by counsel were considered in imposing the sentence.  Indeed, the Court issued a sentence well below the statutory maximum and at the lower end of the recommended guideline range.

With regard to petitioner's claim that he suffered from a "diminished capacity", the Court also finds that argument to be without merit.  To warrant a downward departure based upon "diminished capacity", a party must establish the following: (1) significantly reduced mental capacity that was not the result of the voluntary use of drugs and (2) a causal link between that reduced capacity and the party's actions in committing the charged offense. *See Simmons v. U.S.*, 2005 WL 2033473, *5 (N.D.N.Y. 2005) (quotation and other citation omitted).  Petitioner has not

alleged that he was under the care of any medical professional at the time he committed the offense. Petitioner has not submitted any evidence to establish that he suffered from a reduced mental capacity. Petitioner simply makes bald conclusory assertions and claims that counsel failed to argue this point. Accordingly, it was not unreasonable for counsel to have refrained from presenting that argument at the time of petitioner's sentencing.

**B.      Lack of Understanding of the Nature and Consequences**

Under federal law, a plea is "intelligent" and "voluntary" when a defendant had the advice of counsel, understood the consequences of his plea, and the plea was not physically or mentally coerced, so that the defendant was able to weigh his options rationally. *See Brady v. U.S.,* 397 U.S. 742, 755 (1970); *U.S. v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir. 1989); *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988), *cert. denied,* 488 U.S. 190 (1988) (due process requires only that the defendant "had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way."). "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty". *Id*. (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)).

In this case, petitioner's broad, self-serving and largely conclusory allegations that his plea was unintelligent and involuntary are belied by the record which includes his signature on the plea agreement, as well as his statements at the plea hearing.   The transcript of petitioner's plea hearing amply demonstrates that he had reviewed both the indictment and the plea agreement and discussed the documents with his attorney.

> THE COURT: All right. Now that you've been informed of the penalties to the extent that we know them, and the Sentencing Guidelines, my role under the Guidelines, do you still wish to enter a plea of guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you pleading guilty freely and voluntarily?
>
> THE DEFENDANT: Yes, I am sir.
>
> THE COURT: Did Mr. Wells explain the charges to you?
>
> THE DEFENDANT: Yes, he did.
>
> THE COURT: Did you read them?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand the charges?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you realize the penalties that could be imposed on the day of sentence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. One last question to you. Has there been anyone apart from the plea agreement made promises to you in return for pleading guilty this morning?
>
> THE DEFENDANT: No, sir.

Plea Transcript, pp. 18-19.

As a further matter, petitioner acknowledged during his allocution that the government's recitation of the facts as set forth in the plea agreement was accurate.

> THE COURT: All right. Mr. O'Mara, you just heard the government state what they could prove let me ask you, is that what you did in this case, is that what happened?
>
> THE DEFENDANT: Yes, sir.

Plea Transcript, p. 15.

    The Court made two additional inquiries regarding petitioner's knowledge of the Sentencing Guidelines:

> THE COURT: Now, has your attorney Mr. Wells discussed the Sentencing Guidelines with you?
>
> THE DEFENDANT: Yes, sir.

Plea Transcript, p. 16.

> THE COURT: So your attorney has discussed the Sentencing Guidelines?
>
> THE DEFENDANT: Yes, he has, sir.
>
> THE COURT: You understand how they work?
>
> THE DEFENDANT: Yes.

Plea Transcript, p. 17.

    The transcript of the plea proceeding clearly shows that petitioner fully understood the charges against him, his rights in connection therewith, his right to consult with counsel and his counsel's obligation to explain his rights, particularly with respect to the plea agreement. *See U.S. v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir. 1992) (district court properly rejected petitioner's allegations that his plea was the result of reliance on his attorney's incorrect advice; no evidentiary hearing was required on basis of unsupported allegations, which merely contradicted petitioner's earlier statements made under oath at plea allocution) (citing *Blackledge v. Allison,* 431 U.S. 63, 74 (1977) (statements at plea allocution "carry a strong presumption of verity"); *U.S. v. Bambulas,* 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth").

Accordingly, petitioner has failed to establish that he is entitled to the relief sought in the motion based upon this claim.

C.     **Mental Incompetence**

Petitioner's claim that his thought process was distorted due to bi-polar disorder and medication is unsupported by the record.   Before accepting a plea of guilty, the Federal Rules of Criminal Procedure require that a district court: (1) determine that the defendant understands the nature of the charge(s) to which he is pleading; and (2) make an inquiry to ensure that a factual basis exists for the plea.  *Morales*, 2008 WL 4761705, at * 4. The Second Circuit has established that "if there is any indication ... that defendant is under the influence of any medication, drug or intoxicant, it is incumbent upon the district court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty.  *Id*. (citing *U.S. v. Rossillo*, 853 F.2d 1062, 1066 (2d Cir. 1988)).

In the case at hand, the Court made the following specific inquiry:

> THE COURT: Have you taken any narcotics or alcohol in the past 24 hours?
>
> THE DEFENDANT: Medication or - -
>
> MR. WELLS: Tell him what you've taken.
>
> THE DEFENDANT: I've had Cymbalta, Nexium and hydroxyzine.
>
> THE COURT: What are those medications?
>
> THE DEFENDANT: Medications for my anxiety and my stomach.
>
> THE COURT: Prescribed for you by a doctor or psychiatrist?
>
> THE DEFENDANT: Yes, sir.

>THE COURT: All right. Do they affect your ability to communicate with me, understand what I'm saying to you?
>
>THE DEFENDANT: No.
>
>THE COURT: Affect your ability to talk with your lawyer?
>
>THE DEFENDANT: No.

Plea Transcript, p. 11.

The Court again inquired regarding plaintiff's mental capacity:

>THE COURT: Is there any reason why your ability to understand our discussion right now is impaired in any way?
>
>THE DEFENDANT: No.

Based upon the colloquy and the record, petitioner has failed to demonstrate that he is entitled to the requested relief based upon mental incompetence.

**D.      Coerced Confession**

Petitioner alleges that his lawyer coerced him into signing the plea agreement. Petitioner claims, "I was told by my lawyer I was not going to be able to go under the mandatory minimum, unless I signed a plea agreement. Even know [sic] the agreement clearly stated (crack) and my involvement was limited to marijuana and powder cocaine." The Court, having determined that petitioner voluntarily and knowingly entered into the plea agreement and that counsel was not ineffective, finds this allegation to be without merit.

Based upon the foregoing, the Court finds that petitioner's waiver of his right to appeal or collaterally attack this sentence is enforceable and petitioner's claims are barred. *See Garcia-Santos v. U.S.*, 273 F.3d 506, 508-09 (2d Cir. 2001). Therefore, petitioner's application is denied.

IV.     Conclusion

Based upon the foregoing, petitioner's application pursuant to 28 U.S.C. § 2255 (Dkt. No. 171) is DENIED and the petition is dismissed.

**IT IS SO ORDERED.**

Date:  May 29, 2009

_____
Norman A. Mordue
Chief United States District Court Judge